DA 07-0463

FILED

September 30 2008

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

IN THE SUPREME COURT OF THE STATE OF MONTANA

2008 MT 332

JAMES BOWYER and DOROTHY BOWYER,

       Plaintiffs and Appellants,

  v.

SHANE K. LOFTUS and
ELENBURG EXPLORATION, INC.,

       Defendants and Appellees.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DV 04-1240
Honorable Ingrid G. Gustafson, Presiding Judge

COUNSEL OF RECORD:

       For Appellants:

              Daniel P. Buckley; Buckley Law Office, Bozeman, Montana
John A. Hauf; Attorney at Law, Billings, Montana

       For Appellees:

              Christopher C. Voigt; Crowley, Haughey, Hanson, Toole
& Dietrich, Billings, Montana

              James M. Kommers; Kommers Law Firm, Bozeman, Montana

Submitted on Briefs:  May 21, 2008

Decided:  September 30, 2008

Filed:

_____
                   Clerk

Chief Justice Karla M. Gray delivered the Opinion of the Court.

¶1 The Thirteenth Judicial District Court, Yellowstone County, granted summary judgment in favor of defendant Elenburg Exploration, Inc. (Elenburg), in this action for damages resulting from an automobile collision. James Bowyer and Dorothy Bowyer (Bowyers) appeal. We affirm.

¶2 The issue on appeal is whether the District Court erred in concluding that Shane Loftus was not acting within the course and scope of his employment for Elenburg at the time of the automobile collision.

## BACKGROUND

¶3 Shane Loftus (Loftus) was employed by Elenburg as a well driller. In that capacity, he traveled to various job sites in several states with three or four other members of a drilling crew.

¶4 On March 23, 2004, Loftus worked his shift at a drilling site outside Absarokee, Montana. When the shift ended at 2:30 p.m., Loftus drove three other members of his crew back to their motel rooms in Laurel, Montana. After cleaning up from work, Loftus and one of those crew members, Tom Wilson, traveled in Loftus's truck about 30 miles south to Bridger, Montana, for dinner and drinks. Loftus and Wilson next continued on a sightseeing drive to Red Lodge, Montana, where they stopped at a bar, and then to Absarokee, where they stopped at another bar. At about 8:30 p.m., Loftus and Wilson were nearing the end of their 90-mile roundtrip drive, heading back toward Laurel and their motel. While attempting to pass another vehicle in a no-passing zone, Loftus collided head-on with the Bowyers'

2

vehicle, totaling both vehicles and injuring all occupants of both vehicles.

¶5     The Bowyers filed this action against Loftus and Elenburg, seeking to hold Elenburg vicariously liable for their injuries under a theory that Loftus was acting within the course and scope of his employment at the time of the collision. Following discovery, Elenburg moved for summary judgment. The District Court held a hearing on the motion and later granted summary judgment in Elenburg's favor. For purposes of this appeal, the court certified the judgment as final pursuant to M. R. Civ. P. 54(b).

## STANDARD OF REVIEW

¶6     We review a summary judgment de novo, applying the same evaluation as the trial court under M. R. Civ. P. 56(c). The moving party must establish both the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. To raise a genuine issue of material fact after the moving party has met its burden of proof, the opposing party must present substantial evidence essential to one or more elements of its case, rather than mere conclusory or speculative statements. We review a trial court's determinations on questions of law for correctness. *Farmers Union Mut. Ins. Co. v. Horton*, 2003 MT 79, ¶ 10, 315 Mont. 43, ¶ 10, 67 P.3d 285, ¶ 10 (citations omitted).

## DISCUSSION

¶7     **Did the District Court err in concluding that Loftus was not acting within the course and scope of his employment for Elenburg at the time of the automobile collision?**

¶8     An employer is liable for the acts of an employee only when the employee is acting within the scope of his or her duties to the employer. *Gentry v. Douglas Hereford Ranch,*

3

*Inc.*, 1998 MT 182, ¶ 39, 290 Mont. 126, ¶ 39, 962 P.2d 1205, ¶ 39 (citations omitted).  As Bowyers point out, whether an act was within the scope of employment is generally a question of fact.  *See Kornec v. Mike Horse Mining Co.*, 120 Mont. 1, 5, 180 P.2d 252, 255 (1947).  However, it is a question of law for the court when only one legal inference may reasonably be drawn from the facts.  *See Gentry*, ¶¶ 39-40; *Keller v. Safeway Stores, Inc.*, 111 Mont. 28, 36, 108 P.2d 605, 610 (1940).

¶9      In moving for summary judgment, Elenburg relied on undisputed evidence that Loftus's shift had ended over five hours before the collision occurred, and that Loftus was not returning home from work, being compensated for his time or mileage or engaging in any work-related activity at the time of the collision.  The District Court agreed.

¶10     Bowyers claim that, because Loftus was returning to the motel where he needed to pick up his crew members the following morning, he was acting within the course and scope of his employment.  As they point out, it was undisputed that Loftus's job duties included transporting his crew to the job site and back to the motel in his personal vehicle.  Bowyers rely on *Webster v. Mountain States Tel. & Telegraph Co.*, 108 Mont. 188, 199, 89 P.2d 602, 605 (1939) (citation omitted), for our determination that "[i]f the work of the employee creates the necessity for travel, he is in the course of his employment, though he is serving at the same time some purpose of his own."

¶11     In *Webster*, the defendant driver was a telephone company lineman.  He was driving to a new work site, using his own car but being paid his usual wages, when he struck a pedestrian.  *Webster*, 108 Mont. at 197, 89 P.2d at 604.  We ruled the trial court properly

4

submitted the question of the employer's liability under the doctrine of *respondeat superior* to the jury. *Webster*, 108 Mont. at 201, 89 P.2d at 606.

¶12     The fact that the driver in *Webster* was being paid wages during the time he travelled and struck the pedestrian is a critical distinction between that case and the case presently before us in relation to the course and scope of employment. Here, discovery revealed that, once Loftus returned the Elenburg employees to the motel at the end of the shift, he and the other employees were on their own personal time until they reported for the ride to their next shift. Employees were not required to seek permission from or inform Elenburg if they left the motel. Although Elenburg paid for the motel, it did not provide employees with meal allowances or instruct them on where to eat. Elenburg imposed no curfew or other rules regarding off-duty activities.

¶13     The remaining cases advanced by the Bowyers are, like *Webster*, readily distinguishable. In *Welch v. Thompson*, 145 Mont. 69, 72-73, 399 P.2d 748, 750 (1965), the defendant driver was driving his own vehicle on his way to a new work site, during normal working hours and while being paid, when he was involved in an automobile accident. We affirmed the trial court's legal determination that the driver was under the supervision and control of his employer at the time of the accident. *Welch*, 145 Mont. at 79, 399 P.2d at 754. In *Berrettoni v. U.S.*, 436 F.2d 1372 (9th Cir. 1970), a member of the United States Air Force was driving a vehicle involved in an automobile accident in which the plaintiffs were injured. The driver was on "official travel status" on his way to a new station assignment at the time of the accident. The Ninth Circuit Court of Appeals affirmed a trial court's legal

5

determination that the driver was acting within the course and scope of his employment. *Berrettoni*, 436 F.2d at 1374. Bowyers also cite several cases from other jurisdictions, all of which can be factually distinguished from the present case in that the drivers/employees involved were on their way to or from work, from job site to job site, directly to or from dinner, driving their employer's vehicle, or being paid by the employer for the travel. *See Gordy Constr. Co. v. Stewart*, 456 S.E.2d 245, 246 (Ga. 1995); *Helm v. Wismar*, 820 S.W.2d 495, 496 (Mo. 1991); *Makoske v. Lombardy*, 366 N.Y.S.2d 475, 478 (1976); *Hinman v. Westinghouse Elec. Co.*, 471 P.2d 988, 992 (Ca. 1970); *Hynes v. Donaldson*, 395 P.2d 221, 223 (Colo. 1964). None of these cases raises an issue concerning course and scope of employment under a factual record at all like that before us here.

¶14 Finally, Bowyers argue Loftus was under Elenburg's control even when he was off duty based on deposition evidence regarding Elenburg's self-described "culture of safety" policy. The policy recognized that drilling rigs are dangerous places. Sick or hungover employees were not allowed on the rig. Employees were subject to random alcohol and drug screening and disciplinary action was possible if off-the-clock activities caused safety issues at the rig. In addition, company policy prohibited employees from stopping on the way to or from work.

¶15 The "culture of safety" policy disclosed during discovery does not support Bowyers' argument that Loftus's acts in the collision were within the scope of his employment. The "culture of safety" policy addressed off-duty activities of employees only insofar as those activities affected on-duty work performance.

6

¶16 In a tort action filed against an employer under the doctrine of *respondeat superior*, summary judgment for the employer is proper if the employee's activity is not related to the employer's business. *Gentry*, ¶¶ 39-40. In this case, it is undisputed that the collision occurred during Loftus's off-duty hours and he was not being paid for his travel. Loftus was not driving to or from work at the time of the collision, but was returning from a 90-mile non-work-related jaunt which had begun with dinner and continued with sightseeing and bar-hopping. Nothing of record indicates Loftus's travel that evening was at Elenburg's request or even with its knowledge.

¶17 The District Court stated that, in this case, only one legal inference could be drawn from the facts. We agree. Reasonable minds reviewing the undisputed facts of this case could not differ in determining that Loftus's acts on the evening of the collision were not within the course and scope of his employment with Elenburg. Elenburg has established both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. Bowyers have not, in turn, raised a genuine issue of material fact about whether Loftus was acting within the course and scope of his employment at the time of the collision. Therefore, the District Court did not err in granting summary judgment to Elenburg.

¶18 Affirmed.

/S/ KARLA M. GRAY

We concur:

7

/S/ BRIAN MORRIS
/S/ JAMES C. NELSON
/S/ PATRICIA COTTER
/S/ JIM RICE